UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. _____

John Feloni
16 Puritan Rd.
Somerville, MA 02145
Cell: 617-650-7935
Fax: 617-718-1700
email: jfeloni@aol.com

Plaintiff, Pro Se

_____

|  |  |
|---|---|
| JOHN FELONI )<br><br>   Plaintiff, )<br>   v. )<br><br>PETER M. COCO )<br>CLAIRE COCO )<br><br>ALEXANDRA COCO )<br>FRANK A. CIERI )<br>PENNY (Penelope Stearn) CIERI )<br>OLDE CENTER VENTURES, INC., )<br>DON GUIDO REALTY, LLC )<br>GOLDEN BROOK, INC. )<br>M & P PEABODY INVESTMENTS, INC. )<br>CAMMPTECH INDUSTRIES, INC. )<br>BOND INVESTMENT CORP. )<br>BOND MANAGEMENT CORP )<br>BOND LEATHER CO., INC. )<br>GOOD TURN, INC. )<br>DOTBLATT CORP. )<br>VONTAN INDUSTRIES, INC. )<br>COMMON HERITAGE, LLC )<br>THE CIERI GROUP, LLC )<br>MICROS NORTHEAST, INC. )<br>NORTHEAST COMPUTER )<br>     SOLUTIONS, LLC )<br>211 NEW BOSTON STREET REALTY, LLC )<br><br>   Defendants )<br>_____) | **CIVIL RICO**<br>**COMPLAINT**<br><br><br>**JURY TRIAL**<br>**DEMANDED** |

## COMPLAINT

For this complaint, Plaintiff ("Feloni") alleges as follows:

## NATURE OF THE CASE

This action arises from the fraud perpetrated by Defendants ("Coco and Cieri, et al." or "Coco and Cieri") through a conspiracy of money laundering, bank fraud, mail and wire fraud, tax fraud, tax evasion, currency structuring, illegal mortgage lending, usury lending, predatory lending, investment of ill-gotten gains, extortion, drug distribution and other criminal acts. Through their conspiracy, formation and operation of a criminal enterprise, operated in several states over a period of at least 13 years, the Defendants have caused and continue to cause serious damage to the Plaintiff and many other victims. The Defendants' money laundering, etc. criminal enterprise and conspiracy has succeeded in generating and laundering many millions of dollars and continues to do so today. Among other things, Plaintiff seeks damage in excess of $4 million, including punitive damages and RICO treble damages, for this massive, outrageous fraud.

## PARTIES, JURISDICTION AND VENUE

Plaintiff, John Feloni, hereby brings this Federal Civil Rico Complaint against Defendants: Peter M. Coco ("Coco"); Claire Coco; Alexandra Coco; Frank A. Cieri ("Cieri"); Penny (Penelope Stearn) Cieri; Olde Center Ventures, Inc.; Don Guido Realty, LLC; Golden Brook, Inc.; M & P Peabody Investments, Inc.; Cammptech Industries, Inc.; Bond Investment Corp.; Bond Management Corporation; Bond Leather Co., Inc.; Good Turn, Inc.; Dotblatt Corporation; Vontan Industries, Inc.; Common Heritage, LLC; The Cieri Group, LLC; Micros Northeast, Inc.; Northeast Computer Solutions, LLC; and 211 New Boston Street Realty, LLC, and states as follows:

1. Plaintiff, John Feloni ("Feloni") resides at 16 Puritan Rd., Somerville, MA 02145.

2. Defendants, Peter M. Coco ("Coco"), Claire Coco, and Alexandra Coco are individuals residing at 46 Bear Hill Road, North Andover, MA 01845; and The Barclay, 3546 South Ocean Blvd., South Palm Beach, FL 33480.

3. Defendants, Frank A. Cieri ("Cieri"), and Penny (Penelope Stearn) Cieri are individuals residing at 58 Old Village Lane, North Andover, MA 01845; 92 Hvoslef Way,Vineyard Haven, MA 02568; and 1212 Ben Franklin Drive # 207, Sarasota, FL 34236.

4. Defendant, Olde Center Ventures, Inc. ("Olde Center") is a Massachusetts corporation with a principal place of business located at 147 Summit St., Summit Industrial Park, Building B, Peabody, MA 01960.

5. Defendants: Don Guido Realty, LLC; Golden Brook, Inc.; M & P Peabody Investments, Inc.; Cammptech Industries, Inc.; Bond Investment Corp.; Bond Management Corporation; Bond Leather Co., Inc.; Good Turn, Inc.; Dotblatt Corporation; Vontan Industries, Inc.; and Common Heritage, LLC, are Massachusetts entities with principal places of business at 46 Bear Hill Road, North Andover, MA 01845.

6. Defendants: The Cieri Group, LLC; Micros Northeast, Inc.; Northeast Computer Solutions, LLC; and 211 New Boston Street Realty, LLC, are Massachusetts entities with principal places of business at 58 Old Village Lane, North Andover, MA 01845.

7. This Court has jurisdiction of this action and is the proper venue pursuant to Federal Civil RICO, 18 U.S. C. § 1962 and § 1964.

## FACTUAL ALLEGATIONS & BACKGROUND

Up until February of this year, 2016, Feloni and his business with Defendants Coco and Cieri, et al. was history. The Plaintiff had not had any interaction with the Defendants for a long time. The Plaintiff, Feloni had borrowed money from Coco and Cieri, et al. over a period of several years, but the loans were all paid and their business relationship was behind them. Then in February of this year, 2016, Coco & Cieri, et al. involved Feloni in a case in Massachusetts Essex County Superior Court, Case No. 1577CV01476, as a Reach & Apply Defendant. Then Coco and Cieri, et al. filed a lawsuit against Feloni on May 16, 2016, also in Massachusetts Essex County Superior Court, Case No. 1677CV00627 -- a lawsuit to collect on a promissory note issued May 14th of 2010 (a note which was due in 45 days) -- a note that had been taken care of years ago. This all blind-sided Plaintiff Feloni and he began to do research on Coco and Cieri, et al. in depth. Feloni learned in 2016 that Coco and Cieri, et al., for at least 13 years, have been involved in a several state criminal conspiracy and the creation and operation of a massive criminal enterprise engaged in money laundering, bank fraud, mail and wire fraud, tax fraud and evasion, currency structuring, illegal mortgage lending, usury lending, predatory lending, investment of ill-gotten gains, extortion, drug distribution and other criminal acts. Plaintiff Feloni learned that he was one of many victims of the Coco and Cieri, et al.'s criminal enterprise. These facts are the basis of Feloni's Civil RICO claims against Coco and Cieri, et al.

7. Feloni met Coco and Cieri through their attorney, James V. Miragliotta ("Miragliotta"), whose office was in Lawrence, Massachusetts around 2003.

8. Feloni was given a loan and mortgage by Coco and Cieri's lending vehicle, the Don Guido Realty Trust ("Don Guido"). The loan was a promissory note to Feloni (Exhibit A)

and was secured by a mortgage on Feloni's father-in-law's (John T. Miles -- "Miles") home in Stoneham (Exhibit B). Don Guido was owned and operated by Coco and Cieri and was NOT a registered mortgage lender NOR a registered usury lender. (Note: Feloni should have known that Coco and Cieri had "mafia" aspirations and did business in nefarious ways by the naming of their enterprise "Don Guido". Who does such a thing? Feloni subsequently learned that the name turned out being a prophetic and accurate "brand" of Coco and Cieri, et al.'s criminal operations).

9. Feloni was building a business and his father-in-law, Miles, helped him do so by mortgaging his property. The property had subdivision potential which Feloni was working on for Miles. Coco and Cieri, via their attorney, Miragliotta, lent money to Feloni and secured the loans with the Miles' real estate. The Defendants saw value in Feloni's business venture(s) and the Miles property, obviously.

10. On some of the several loans (Exhibit C -- check stubs issued to Feloni on behalf of Don Guido through their attorney Miragliotta's client account) made to Feloni over the next few years by Don Guido, all of which were paid in full (Exhibit D -- a signed memo from Peter Coco dated 2/15/06 where he states that only $20,000 is owed), Coco and Cieri put mortgages on Miles' home **without** Miles' signature. Neither Feloni nor Miles was aware of this at the time.

11. Feloni paid exorbitant **cash** fees up front (20% of the loan amount) to get the loans from Don Guido (and subsequently ALL Coco and Cieri, et al. loans). See Factual Allegation #31. At the time neither Don Guido, nor Coco, nor Cieri, nor ANY of their Defendants' entities were licensed to give mortgages nor were registered usury lenders. Feloni needed the money to fund a business so he paid the fees to get the loans. Feloni had no other financing options and was a perfect victim for a predatory lender like Coco and Cieri, et al. Defendant Peter Coco also lent to Feloni personally (charging usurious rates) over a period of years. All such notes were paid and interest was mostly paid in cash (Exhibit E -- see Peter Coco's handwriting and signature noting a cash payment).

12. In 2004, when Feloni fell behind in payments to Don Guido, while attending a charity fundraiser at the Lanam Club in Andover, MA, Cieri threatened Feloni that he was going to put his elder father-in-law (Miles) in the street and take his home (as predatory lenders do). Feloni learned that this was common behavior of Coco and Cieri and their lending companies. Feloni also recently learned that these predatory, usury, unlicensed, illegal mortgage loans given by Coco and Cieri, et al. and their strong-arm tactics, have many victims. Fortunately, Feloni was able to arrange a mortgage loan with another party to pay off Don Guido, and Coco and Cieri, and avert a foreclosure and eviction. The stress and emotional suffering was great during this period for Feloni and his family and the damage done to Miles so affected his health that it led to his ultimate death. (NOTE: both Coco and Cieri are licensed handgun owners and make this fact known to all of those they lend money to. Also, again note, who names their business "Don Guido"? It clearly shows the Coco and Cieri aspirations and personalities and their not-so-subtle "heavy hand" brand they desire to show and DO show their loan victims).

13. On October 31, 2007, Coco and Cieri, et al.'s attorney Miragliotta received a 6 month suspension of his law license from the Mass Board of Bar Overseers because of the legal work he did for Don Guido and another Coco and Cieri entity (Exhibit F -- the Miragliotta clients and lenders in this document ARE Coco and Cieri, et al. as Miragliotta and the authorities involved will testify to). The loans were done in 2004-2005 and were secured by residential real estate mortgages (which neither Coco nor Cieri nor any of their lending entities were licensed to engage in). All of the Coco and Cieri, et al. predatory loans and mortgages to all of their victims required heavy **cash** fees up front and were ALL usurious. Strangely, in this instance, Coco and Cieri escaped any legal liability (as far as Feloni was to ascertain). Miragliotta took the fall. The Defendants paid Miragliotta thousands of dollars for his silence and told him to head south...he did and now resides in Florida. ALL of the Coco and Cieri, et al. illegal loans and their victims and files during this time period exist within the Miragliotta law license suspension investigation. An excess of 2,500 files were the subject of this matter. The evidence showing the illegal enterprise of Coco and Cieri, et al. during this time period is extensive and VERY conclusive as to the inner workings of the Coco and Cieri, et al. criminal enterprise operation.

14. Later on in years 2008-2010, Feloni borrowed money from Coco and Cieri's new entity, Olde Center Ventures. Inc. ("Olde Center") and from Coco individually, again for businesses he was either starting or purchasing. These loans also required hefty upfront **cash** fees (20%) and were usurious. (btw: Olde Center Ventures was a new iteration of Don Guido -- it was and is also owned by Coco and Cieri, is funded by the same ill-gotten gains accumulated by Don Guido and was started because of the trouble Don Guido got into along with attorney Miragliotta).

15. Feloni always paid Coco and Cieri in checks or **cash**. Most of the time Coco and Cieri would not take a check and demanded **cash**. Via email and/or the phone, when Coco wanted only **cash** he would say, "take me some lettuce." Coco is not into salads. When he said "lettuce" he meant take **cash**. Coco and Cieri have an insatiable, gluttonous hunger for **cash** and put serious pressure on Feloni and all their borrowers to get it. This is when they very strongly go into their "Don Guido" methods of doing business, extorting and collecting money. They used email quite often to perpetrate their lies and deception and vicious methods of collection...wire fraud is part of their *modus operandi.*

16. Coco and Cieri's pressure for **cash** from Feloni ruined Feloni's businesses. Coco and Cieri, et al. promised Feloni to help build his businesses, yet they knowingly and willingly and always intended to milk Feloni of cash and destroy his business. In fact, the Defendants couldn't care less about Feloni's business. All they cared about was how much cash they could squeeze out of him. Coco and Cieri, et al. were intimately involved in every aspect of Feloni's businesses since they owned interest in them (given to them as consideration for loans). Feloni met or spoke on the phone with the Defendants at least twice per week regarding Feloni's businesses as demanded by the Defendants (Exhibit G). All such meetings were driven by the Defendants' demands of cash.

17. The Defendants had a contract to aid Feloni in his business, to help him build it (they, in fact received an interest in several Feloni companies...as an example see the promissory note where Feloni gives the Defendants stock in his company as consideration for the note -- Exhibit H). Feloni states unequivocally the fact that the Defendants agreed to help build his business contractually and lent him money to do so. Yet they squeezed Feloni for cash, threatened him with their predatory, fraudulent, deceptive and malicious business practices and ultimately put him out of business. Plaintiff Feloni will support these claims with documents and testimony in both the discovery process and trial.

18. Defendants Coco and Cieri, et al. fraudulently induced Plaintiff Feloni to do business with them by claiming they would help Feloni execute his business ventures and that by doing so Feloni would more than make up the huge usury rates Feloni paid the Defendants. Then, subsequently, after their fraudulent inducement, the Defendants were brutal in their harassment, threats and other "Don Guido" collection techniques. The Plaintiff's business ventures that the Defendants either lent to or invested in that were ultimately destroyed by the Defendants include but are not limited to: HOTUB, LLC; The Boston Music Awards; The New England Music Organization, Campus Entertainment; and WonderWorld Entertainment.

19. Feloni met with Coco and Cieri continuously regarding the said business ventures that they ultimately destroyed by their relentless pursuit of cash from Feloni (again see Exhibit G). The Defendants lied to and deceived Feloni on numerous occasions. They did not help his business as they promised, in fact, they did everything in their power, in pursuit of money, to destroy Plaintiff Feloni and his business. The Defendants KNEW when they got into this contract and agreements with Feloni that they would NOT help his business and that they would do everything in their power to milk him of every dime possible...and mostly demanded CASH! They never had any intent at all to help Feloni and they knew that when they enticed Feloni to do business with them. They participated in numerous unfair business practices and deceptive acts. Feloni was only one victim of many where such acts and practices were common for the Defendants in their business dealings. Feloni learned that the Defendants do this to everybody they do business with!

20. Coco and Cieri had a strong relationship with a banker at the Lawrence Savings Bank (his name was something like Steve Venti). Coco and Cieri did some nefarious banking with this banker. River Bank took over Lawrence Savings and ultimately River Bank was taken over by People's United Bank. The banker mentioned above got in trouble and People's United put a new loan officer on the Coco and Cieri, et al. accounts. Coco and Cieri then got in hot water with the bank based upon their fraudulent misrepresentation of collateral they gave to the bank on their $5 million line of credit (this was not a problem for them with the other shady banker who was being paid off for his compliance with Coco and Cieri). Coco and Cieri were doing things with the bank money that was unethical if not illegal (e.g. lending the bank money out on residential mortgages, giving predatory loans, money laundering, fraudulently represented collateral, etc.). As he did with other people, Coco panicked and threatened Feloni regarding his loans with Olde Center (which were minuscule in the scope of the Defendants' $5 million loan portfolio).

In an email dated 1/14/2011 (Exhibit I) Coco said to Feloni, "We are teeter-tottering on oblivion here. I have no choice but to see an attorney who will basically work for the bank. I am sure this will destroy your business and eliminate any chance of getting paid. I am meeting with him on the 18th and he will take over all delinquent loans." Feloni's response to Coco was that he has no business with the bank and that it was Coco's problem not his, and if anyone tries to destroy his business he will sue them. Coco never mentioned this bank matter again to Feloni. Feloni, through his research, learned that Coco and Cieri had huge problems with the bank that still may not be resolved and may have even led to very serious bank law criminal exposure for them.

21. As another consideration on loans from Coco and Cieri, et al., Feloni gave his stock interest in a local children's animation company to Coco -- WonderWorld Entertainment, LLC ("WWE"). WWE has yet to make money but does still exist. In his retribution and anger phase (in which he remains), as his criminal issues put pressure on him and legal jeopardy engulfed his life, Coco reported WWE and Feloni (who did some consulting work for WWE) to the SEC for their methods of raising investor money. Coco had NO basis for this allegation. It was totally unfounded and purely vicious and malicious, (many people can attest to this type of action as being both Coco and Cieri's nature and typical behavior). They are vicious, mean-spirited men...many people will testify to this fact. The SEC opened an investigation on WWE in December of 2013. After great expense and time and stress the SEC cleared WWE and Feloni in May of 2014. It was found that both the company and Feloni did things properly. However, because of the costs, time and aggravation, the investigation almost broke this good company filled with great people, and the stress on Feloni (financially, professionally, and personally) was great as well. Another example (of many) of the significant damage the Defendants did to the Plaintiff.

22. It seems that to be an attorney of Coco and Cieri, et al., destines you to be either suspended, disbarred, and/or even convicted of felonies (as 2 of their attorneys have been, attorneys Lagorio and Germano -- Exhibit I)). And all of those lawyers' problems stem from working on the Coco and Cieri, et al. business. Currently, another couple of lawyers are in hot water because of Coco, et al. On 6/29/2016 in the Woburn District Court there was a magistrate hearing against Coco for mortgage fraud for a 2010 mortgage Coco gave an attorney Germano (Exhibit J). It is a criminal complaint brought against Coco by a former lawyer of his (Michael Germano -- now a disbarred and a convicted felon because of his Coco and Cieri, et al. work). The two lawyers who may be in hot water from this mortgage and trust matter that represented Coco are from Tarlow, Breed, Hart & Rodgers, P.C. in Boston.

NOTE: Attorneys Lagorio, Germano and Miragliotta got in their respective trouble (disbarred, convicted of felonies or suspended) by working on the Defendants' criminal enterprises and they will testify to such. (See Exhibits F, I and J).

23. The Coco and Cieri, et al. in the two cases is Massachusetts Essex Superior Court cases mentioned above (where they involve Feloni) seems to have a proclivity for questionable behavior as well. He stand in front of a judge and tells the judge that Coco

and Cieri, et al. have no interest in Feloni at all, then within two weeks they file a lawsuit against him. The attorney improperly, if not illegally, in one of those cases acquires the bank records of Feloni without Feloni being a party to the case. He gets the bank records of Merola (a party in one of the cases mentioned above who is being sued by Coco and Cieri, et al.) improperly, if not illegally, as well. It is clear that the information used in Coco, et al.'s case vs. Merola in which Feloni was made a Reach and Apply defendant, that Coco and Cieri, et al. have gotten access to ALL of the legal files of Feloni whose attorney in his case vs. Merola (settled in December, 2015) is from Tarlow, Breed, Hart & Rodgers, P.C. ("Tarlow, Breed")! YES, the same law firm of Coco and Cieri, et al.! Interestingly at Feloni's deposition in the Coco and Cieri, et al. v. Merola cases, on May 31, 2016. Coco and Cieri, et al.'s attorney was in "CYA" mode. All he wanted was for Feloni to tell on the record stuff that Coco and Cieri, et al. had already known and acquired from Feloni's Tarlow files (which included Merola's bank records sealed under a Court order). An example of Coco and Cieri, et al. having access to Feloni's private legal files at Tarlow, Breed is when the Coco and Cieri, et al.'s attorney asked Feloni about his settlement with Merola. Feloni refused to answer because it was confidential. After Coco, et al.'s lawyer said he would get a Court order to answer the question, Feloni ultimately did answer, Feloni said, "$134,000". THAT statement by Feloni SHOULD have been the first time that Coco and Cieri, et al. heard that number. Well, isn't it interesting that on February 10, 2016, Coco, in a sworn affidavit in his case against Merola stated, "The Defendant Metropolitan Capital apparently secured a judgment in the amount of $134,000 against John Feloni..." And in Coco and Cieri, et al.'s lawsuit vs. Merola, filed on February 16, 2016, Coco, et al. states " The Defendant Metropolitan Capital and Metropolitan Income Fund I apparently have secured a judgment in the amount of $134,000 against Reach and Apply Defendant John Feloni..." WHAT! How did Coco and Cieri, et al. KNOW that settlement number? It was CONFIDENTIAL! The confidential agreement existed in Feloni's file at Tarlow, Breed and the two Coco and Cieri, et al. lawyers at Tarlow who are now in trouble along with Coco, et al. got into the Feloni files and shared them with Coco and Cieri, et al. There are several "coincidences" that prove this and Coco and Cieri, et al.'s current attorney is scrambling to cover this trail of unethical if not criminal lawyer behavior. Again, it seems as if Defendants only hire attorneys who will do their dirty work (and ultimately disbarred, convicted of felonies, and/or get their law license suspended).

24. Apparently, the Defendants believe that one can subpoena anyone's bank records for any reason or no reason just because they have a legal action somewhere in the court system. KEEP THIS IN MIND, the Plaintiff was NOT a party to the case in mention at the time of the Defendants' acquisition of Feloni's bank records. Feloni's bank records were acquired improperly in a case he was NOT a party to. He was never served a subpoena by anybody regarding the Defendants' acquisition of his bank records...SO HE NEVER had the opportunity to OBJECT to his bank records being released. This is a blatant violation of civil rules and procedures and the law and typical of the heavy-handed and abusive tactics that the Defendants use in all of their business practices. Apparently, the Defendants are under the impression that there are no rules and procedures nor laws to follow regarding the acquisition of a non-party's bank records. The Plaintiff was NOT served a subpoena nor notified by ANYONE (including his bank

which, by the way, coincidently is THE current bank of the Defendants) that the Defendants served a subpoena to Feloni's bank demanding his bank records. Merola (a party to the case in question was NOT notified either of the subpoena for Feloni's bank records (Exhibit K). The Defendants clearly know that what they did was wrong but also clearly did not care! There are privacy laws for protecting bank records. These laws outline specific procedural rules in the acquisition of a non-party's bank records. NONE of which were followed here by the Defendants. Not even the IRS or any other government entity could have done what the Defendants did in their acquisition of Feloni's bank records. Apparently, the Defendants' counsel believes he is above the law and the ethics of his "officer of the court" procedural responsibilities.

25. A quick note regarding the particular case that Coco and Cieri, et al. brought against Feloni in Massachusetts Essex Superior Court to collect money on a note executed on May 14, 2010 and due on June 30, 2010 -- a 45 day note (Exhibit H). Given the characters involved (Coco and Cieri) and their hard nosed, brutal and even vicious collection techniques....can one even begin to imagine that Coco and Cieri waited for 6 years to collect on this 45 day note if it wasn't paid? (It was paid in cash). Good luck convincing a jury of that!

26. Plaintiff Feloni DOES allege that all loans to him by the Defendants (several over several years) are usurious. Loans were made to the Plaintiff by the Defendants in other entities other than Olde Center Ventures, Inc. and before they were registered as usury lenders. Feloni is making claims of SEVERAL usurious loans to him by the Defendants and is demanding that the Defendants return to him all of the money paid on those illegal usurious loans. Defendants always demanded in cash 20% of the loan amount up front (which is clearly evidence of money laundering, tax evasion and structuring...all CRIMINAL violations...on all their loans. Feloni will show that not only was he a victim of such predatory practices but there are MANY such victims of this *exact* business practice of the Defendants over a long period of time (at least 13 years).

27. Further evidence of the Defendants' long term and extensive criminal enterprise is outlined in a Lawrence Eagle-Tribune article about the Defendants and their lawyer's predatory and usury lending, cash kick-back and money laundering investigation by the police chief of Lawrence, John Romero and detective Michael Simard (Exhibit L). Both of these law enforcement officers will testify as to Coco and Cieri, et al. being the lenders talked about in this article.

28. Illegal mortgages were made by Defendants to Plaintiff Feloni and his father-in-law, John T. Miles ("Miles") as collateral to Feloni's promissory notes (Exhibits A and B). The Defendants, in these illegally written mortgages wrote the checks to Feloni and Feloni made all the payments on both the mortgages and notes. To each promissory note was a mortgage...their combinations were considered as one loan in each loan instance. NO checks were ever written by Miles to the Defendants on the Miles's mortgages since the mortgages were security for Feloni loans...all paid by Feloni.

29. Defendants, Coco and Cieri, et al. have a huge history of predatory lending and of threatening and harassing those they lend to. Plaintiff Feloni will not only present to the Court his own evidence of the Plaintiffs' actions but in trial will deliver to Court via affidavit, depositions and testimony several victims of Coco and Cieri, et al.'s predatory practices.

30. Feloni plans to show at trial the extent of the money laundering operation and criminal enterprise run by the Defendants. It is very important in this Civil Rico case to do so since the funds lent to Defendant Feloni are from a pool of funds that were obtained via illegal activity. A contract utilizing funds obtained via ill-gotten gains is void by law. Feloni will prove that all of the Plaintiffs' lending contracts/notes/mortgages executed with Defendant Feloni were funded by ill-gotten gains via criminal activity and as such are null and void and all such monies paid to the Defendants by Feloni MUST be returned to him.

31. Feloni has several examples of such claims. The following is the typical *modus operandi* of the Plaintiffs (Feloni has numerous examples of his own showing this behavior and will have many victims of the Defendants tell their own similar stories at trial):

On September, 2003, Plaintiff Feloni executed a $62,500 Promissory Note (see Exhibit A) with the Defendants' Don Guido Realty Trust (this entity was morphed into Olde Center Ventures, Inc. after it got into trouble...Olde Center Ventures, Inc. has the same owners, Defendants Coco and Cieri, and used the same capital pool as Don Guido Realty Trust...it was literally just a name change). The $62,500 note was executed at the Defendants' attorney, Jim Miragliotta's office (the same attorney given a 6 month suspension for work he did on other Don Guido Realty Trust loans, (Exhibit F). To collateralize the $62,500 Promissory Note the Defendants put a mortgage on Plaintiff Feloni's father-in-law's ("Miles") residence (Exhibit B). Part of the loan agreement was for Feloni to pay 20% of the loan amount up front (($12,500). After the signing of the documents by both Feloni and Miles, Feloni, Miles, attorney Miragliotta, and Defendant Coco went to the Lawrence Savings bank where both Feloni and Miles each cashed a $6,250 check that was issued at the loan closing (Exhibit M -- this is clearly a criminal structuring violation). The cash from these checks was given to Defendant Coco. This was a key action ALWAYS utilized by the Defendants in their money laundering and usury operation WITH EVERYONE.

FACTS TO NOTE:

                   * Feloni made the payments on both the Note and the Miles mortgage.
                   * Between the 20% fee upfront, and the Note and mortgage payments... this was clearly a USURY loan.
                   * Don Guido Realty Trust was NOT a registered Usury Lender.
                   * Don Guido Realty Trust was NOT a licensed mortgage broker.
                   * Feloni did several transactions like this with the Defendants.
                   * Feloni knows of many people who have done loans like this with the

Defendants and will produce them at trial. Example: Michael Germano's pursuit of Defendant Coco for Mortgage Fraud (Exhibit J).

* Article in Lawrence Eagle Tribune talks about loan scams and money laundering investigation...the perpetrators were Coco and Cieri, their companies and their attorney, Jim Miragliotta. (see Exhibit L). Miragliotta lost his law license for 6 months because of this.
* The Defendants' criminal enterprise also includes the money laundering of cash acquired through drug distribution. (Exhibit N).

32. Among other defamatory statements, Defendant Coco told Steven Merola, a business partner of Plaintiff Feloni, regarding Feloni's co-authorship of the bestselling book, *The Fall of the House of Hutton* (Henry Holt, 1989) that "Feloni had nothing to do with that book. He is a fraud. If you do business with him you will be considered a fraud." ( Exhibit O). This untrue and defamatory statement (the truth being easily proved here since the book was a bestseller and covered by all the major media nationwide...the book was an expose on the EF Hutton takeover by Shearson Lehman Brothers...Feloni was a whistleblower of a massive Wall Street fraud and he was written about in a major way by the national media) caused Feloni great harm in his business and he suffered severe monetary and professional damage. Coco ruined the Feloni/Merola business relationship which subsequently led to significant lost business and income for Feloni.

33. Feloni learned of large amounts of cash being paid on the Defendants' loans via delivery to Defendant Claire Coco at her Palm beach home in Florida.

34. Defendant Coco has several safes in his North Andover, MA home and always has cash on hand of between $500,000 and $1,500,000...cash generated from the Defendants' criminal enterprise.

35. The foundation of what we have here in this criminal, money laundering enterprise that Coco and Cieri, et al. run is the combination of two huge egos, one (Cieri) who has a superiority complex and one (Coco) who has an inferiority complex. Together they are lethal. Combine that with their intense love of **cash**, their total disregard for human beings (Coco actually repossessed a car from an 18 year old boy who owed him $8,000 and was late in his payments...bad enough, right?...but the *coup de grace* here is that this 18 year old boy who needed that car to get to work was Coco's Little Brother from the Big Brothers charity organization! And Coco was worth millions at the time...this man will testify to that fact), and their romantic admiration and aspirations to be *mafioso*, and you have a formula that has harmed many people and left a lot of pain, suffering and bloodshed in their wake, including that of Feloni.

36. The time line and extensive evidence showing Defendants running their criminal enterprise over a long period of time with the same criminal business methods that harmed many people, including the Plaintiff is direct, specific, voluminous, undeniable, transparent, indisputable and conclusive. In each of the following instances lies tons of document evidence, several witnesses, and an incredible number of victims who are known and available (including law enforcement officials)...all of these situations are

related specifically, absolutely and totally to the Defendants' criminal enterprise (in EACH of these instances the perpetrators ARE the Defendants:

> * 2003 to 2010 -- Feloni loans (examples of a few were mentioned above) .
> * 2007 -- Lawrence Eagle Tribune article of loan fraud and predatory lending in Lawrence, MA.
> * 2007 -- The Miragliotta law license suspension from working on Defendant loans.
> * 2013 -- Coco drug distribution charges.
> * 2013 -- The disbarment and felony convictions of attorneys Lagorio and Germano from working on Defendant loans.
> * 2016 -- Criminal Complaint hearing of Germano v. Coco for violation of the mortgage lending process, false statements; and engaging in residential mortgage fraud.

NOTE: The Defendants used their ill-gotten gains acquired via their extensive criminal enterprise to invest in and/or lend to private companies such as Plaintiff Feloni's as well as investment in publicly traded securities.

## FIRST CLAIM

(Federal Privacy Violations and Federal Bank Fraud)

* Right to Privacy Act of 1978
* Fair Credit and Reporting Act
* Gramm-Leach-Bliley Act
* Fair Debt Collection Practices Act (Reg F)
* Unfair and Deceptive Acts or Practices (UDAAP) Compliance (Reg AA)
* United State Privacy Act of 1974
* Bank Secrecy Act
* U.S. Patriot Act
* Federal Trade Commission Act (for consumers)
* Federal Consumer Credit Protection Act

37. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

38. Defendants Coco and Cieri, et al. willfully and with intent to harm, harass, and intimidate, illegally acquired the bank statements of Feloni.

39. Defendants Coco and Cieri, et al., through nefarious, unethical and illegal means have gained access to Feloni's confidential legal files at the law firm of Tarlow, Breed, Hart & Rodgers in Boston. Defendants also broke bank laws in their representation to banks and consumers (their victims), and in their collection practices, among other violations.

40. Feloni suffered damage as a result.

## SECOND CLAIM

(Federal Civil RICO. 18 U.S.C § 1962(c))

41. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

42. Defendants violated RICO and Plaintiff was injured as a result.

43. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

44. Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

45. The Defendants created and operated an enterprise within the meaning of 18 U.S.C. § 1962(c) and for a period of at least 13 years engaged in the conduct of their affairs through a continuing pattern of racketeering activity.

46. The Defendants did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the illegal enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c). The racketeering activity was made possible by the Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violations that the Plaintiff alleges.

47. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below. Defendants each committed at least three such acts or else aided and abetted such acts.

48. The acts of racketeering were not isolated, but rather the acts of the Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering have been continuous. There was repeated conduct during the period of time beginning approximately 2003 or sooner and continuing to the present, and there is a continual threat of repetition of such conduct.

49. Defendants carried out their scheme in different states, including but not limited to Massachusetts, Delaware, New York, New Jersey, New Hampshire and Florida.

50. Continuity of Conduct. Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiff and other market participants, constituted a continuous course of conduct spanning a period from at least

2003 to present, which was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under U.S.C §§ 1961(1) and (5).

51. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. § 1962(c).

52. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business. Plaintiff seeks an award of damages in compensation for, among other things, the millions of dollars Defendants stole from Plaintiff.

53. Plaintiff accordingly seeks an award of three times the damage it sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

## THIRD CLAIM

(Conspiracy to Violate Federal Civil RICO. 18 U.S.C § 1962(d))

54. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

55. Defendants violated RICO and Plaintiff was injured as a result.

56. In violation of 18 U.S.C. § 1962(d), the Defendants, and each of them, knowingly, willfully and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged in the paragraphs above.

57. The conspiracy commenced as early as 2003 and is ongoing.

58. The conspiracy's purpose was to divert money from Plaintiff Feloni and others to their own benefit to facilitate a money laundering and tax fraud scheme in an effort to defraud Plaintiff Feloni and others.

59. Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included, misleading Plaintiff as to the interest rates and fees charged, being usury and illegal, demanding cash to satisfy their money laundering and tax evasion scheme, and deceiving Plaintiff Feloni into believing they would help his business properties.

60. Even if some of the Defendants did not agree to harm Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy,

and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

61. Plaintiff has been injured and continues to be injured in its business and property by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d). The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business. Plaintiff further seeks an award of damages they sustained, in compensation for, among other things, the millions of dollars Defendants stole from Plaintiff.

62. Plaintiff accordingly seeks an award of three times the damage it sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

## FOURTH CLAIM

### (Federal Civil RICO. 18 U.S.C § 1962(c))

63. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

64. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

65. Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

66. Defendants violated RICO and Plaintiff was injured as a result.

67. The Enterprise. Defendants, through their continuing pattern of racketeering activity set forth herein created and operated a criminal enterprise for their own illegal purposes.

68. The Defendants did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the illegal enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c). The racketeering activity was made possible by the Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violations that the Plaintiff alleges.

69. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

70. The acts of racketeering were not isolated, but rather the acts of the Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering have been continuous. There was repeated conduct during the period of time beginning approximately 2003 or sooner and continuing to the present, and there is a continual threat of repetition of such conduct.

71. Continuity of Conduct. Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiff and other market participants, constituted a continuous course of conduct spanning a period from at least 2003 to present, which was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under U.S.C §§ 1961(1) and (5).

72. Plaintiff has been injured and continues to be injured in its business and property by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d). The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business. Plaintiff further seeks an award of damages they sustained, in compensation for, among other things, the millions of dollars Defendants stole from Plaintiff.

73. Plaintiff accordingly seeks an award of three times the damage it sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

## FIFTH CLAIM

### (Fraud)

74. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

75. Defendants, upon information and belief, knowingly and intentionally misled Plaintiff by failing to disclose usury interest and illegal cash fees and their knowing intention to not help Plaintiff Feloni build his business promised.

76. Plaintiff justifiably relied upon Defendants' intentional concealment of the way they did business to his detriment.

77. Defendants violations of state and federal laws as alleged by the Plaintiff, each of which directly and proximately injured the Plaintiff and others, constitute a continuous course of conduct spanning from approximately 2003 to the present, which was intended to obtain and launder money through false representations, fraud, deceit and other improper and unlawful means. Therefore, these violations were a part of a pattern of racketeering activity under RICO.

## SIXTH CLAIM

### (Federal Civil RICO. 18 U.S.C § 1962 and 1964)

All Encompassing Federal Civil RICO laws covering the following Predicate Acts:

* Pattern of racketeering activity
* Collection of unlawful debts to invest the income in enterprises which engage in interstate commerce
* Extortionate credit transactions
* Wire fraud
* Bank Fraud
* Racketeering (the Hobbs Act)
* Money Laundering
* Monetary transactions in property derived from specified unlawful activity
* Violations of the Currency and Foreign Transactions Act
* Drug offenses
* Schemes to defraud
* Extortion
* Usury
* Investing in securities and companies via money laundered funds

78. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

79. Defendants violated RICO and Plaintiff was injured as a result.

## SEVENTH CLAIM

### (Illegal Mortgage Lending and Usury)

Violation of laws including but not limited to:

* The S.A.F.E. Act (Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (Reg G)
* Home Mortgage Disclosure (HMDA) Compliance (Reg C)
* Truth in Lending(TILA) Compliance (Reg Z)
* Unfair and Deceptive Acts or Practices (UDAAP) Compliance (Reg AA)

80. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

81. Defendants violated Federal laws and Plaintiff was injured as a result.

## EIGHTH CLAIM

(Structuring Transactions to evade the Bank Secrecy Act and IRS, Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 5211 et seq.)

82. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

83. Defendants violated Federal laws and Plaintiff was injured as a result.

## NINTH CLAIM

(Mail and Wire Fraud -- 18 U.S.C. § 1341; 18 U.S.C. § 1342)

84. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

85. The Defendants extensively used the mail, email and telephone in their criminal enterprise.

86. Defendants violated Federal laws and Plaintiff was injured as a result.

## TENTH CLAIM

(Investment Violations -- Federal Civil RICO. 18 U.S.C § 1962)

87. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

88. Federal Civil RICO. 18 U.S.C § 1962 forbids: "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity...in which such person has participated as a principal...to use or invest, directly or indirectly, and part of such income, or [its] proceeds...in acquisition of any interest in, or the establishment or operation of any enterprise..."

89. The Defendants have invested their ill-gotten gains in both public securities and private companies (such as the Plaintiff's) with the money earned from their illegal racketeering enterprise. The Plaintiff was directly injured by the use or investment of racketeering income.

### ELEVENTH CLAIM

(Bank Fraud -- 18 U.S.C. § 1344; 18 U.S.C. §§ 1956 - 1957)

84. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

85. The Defendants extensively used the mail, email and telephone in their criminal enterprise.

86. Defendants violated Federal laws and Plaintiff was injured as a result.

### TWELFTH CLAIM

(Money Laundering -- 18 U.S.C. §§ 1956 - 1957)

84. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

85. The Defendants extensively used the mail, email and telephone in their criminal enterprise.

86. Defendants violated Federal laws and Plaintiff was injured as a result.

### THIRTEENTH CLAIM

(Defamation)

87. Plaintiff Feloni repeats all Facts and Allegations contained in the paragraphs set forth above.

85. The Defendants willfully and with intent to harm, made false and damaging to business associates, friends and clients of the Plaintiff.

86. Defendants violated Federal defamation laws and Plaintiff was injured as a result.

## **LEGAL SUMMARY**

The Plaintiff in this Civil Rico Claim (Feloni) began his investigation of the Plaintiffs (Coco, Cieri, et al.) and learned of all their fraud and illegal acts, and their running of a criminal enterprise, in 2016 when he was brought into a Massachusetts' case by the Defendants.

The Defendants willfully and unlawfully conspired to facilitate a scheme which included the operation and management of a RICO enterprise through a pattern of racketeering activity over a long period of time (at least as early as 2003) in several states (including but not limited to: Massachusetts, Delaware, New York, New Jersey, New Hampshire and Florida).

The Defendants violated RICO and the Plaintiff was injured as a result.

The harm the Plaintiffs caused to the Defendant was a foreseeable consequence of the Plaintiffs' actions.

The Defendants willfully and unlawfully conducted or participated, directly or indirectly in the affairs of the illegal enterprise through a pattern of racketeering activity as defined by the law. The racketeering activity was made possible by the Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive Rico violations that the Plaintiff alleges.

The Defendants committed at least three predicate acts necessary to fulfill a valid RICO claim. These acts were done intentionally and knowingly with the specific intent to advance the Defendants' scheme or artifice. The pattern, continuity, and relationship of these predicate acts make a solid RICO claim.

Defendants violations of state and federal laws as alleged by the Plaintiff, each of which directly and proximately injured the Plaintiff and others, constitute a continuous course of conduct spanning from approximately 2003 to the present, which was intended to obtain and launder money through false representations, fraud, deceit and other improper and unlawful means. Therefore, these violations were a part of a pattern of racketeering activity under RICO.

The Plaintiff has been injured and continues to be injured in his business and property by the Defendants' conspiracy and illegal actions in violation of RICO. The Defendants' illegal conduct was willful, wanton, malicious, and oppressive. The Defendants violated RICO and the Plaintiff was injured as a result. The harm the Plaintiffs caused to the Defendant was a foreseeable consequence of the Plaintiffs' actions.

In this case the Defendants have created and operated a criminal enterprise for at least 13 years and continue to do so. Their enterprise has operated in at least 5 states. They have committed several predicate acts that are necessary to bring a RICO complaint. The Plaintiff's injuries were directly due to the Defendants' commission of these predicate acts. Their criminal enterprise has purposely and directly harmed the Plaintiff. The Defendants' wrongful conduct was a substantial and foreseeable causes of the injuries alleged, and the connection to the injury to the Plaintiff was logical and direct. The Plaintiff was an intended target of the Defendants' conduct. The Plaintiff suffered substantial financial loss from the Defendants' predicate acts committed on him. The Defendants directly destroyed several businesses of the Plaintiff by their actions.

The Defendants invested their ill gotten-gains in the stock market and private companies (including but not limited to the Plaintiff's companies).

The Plaintiff represents himself in the filing of this complaint. He intends on securing counsel as soon as possible for the pre-trial and discovery process.

NOTE: A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) . *See also* Fed.R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ("Feloni") respectfully requests that the Court:

1. Award compensatory damages of $4,000,000 to the Plaintiff.

2. Award consequential, exemplary and punitive damages to the Plaintiff in an amount to be determined at trial.

3. Award and demand the Civil Asset Forfeiture of the Defendants' assets as a remedy for the Plaintiff being a victim of grand corruption via ill-gotten gains and money laundering and authorize the U.S. Attorney to execute such forfeiture.

4. Award attorney's fees and costs to Plaintiff; and.

5. Grant to Plaintiff whatever other relief that this Court deem just and proper.

6. Award triple damages and all costs to the Plaintiff via the Federal Civil Rico statute, Section 1964(c).

## JURY DEMAND

The Plaintiff Feloni, demands a Trial by Jury.

Respectfully submitted,

Dated: October 25, 2016

John Feloni, Pro Se
16 Puritan Rd.
Somerville, MA 02145
(617)65-7935